UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDRE MOTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 1:23-cv-01758-JMS-CSW |
| v. | ) |
| | ) |
| J. SURGUY, Officer, and ALDERSON, Sgt., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiff Andre Moton was incarcerated at Pendleton Correctional Facility ("PCF") during the events underlying this litigation.[1] He filed this *pro se* lawsuit against Defendants J. Surguy, an Officer at PCF, and Alderson, a Sergeant at PCF, alleging violations of his Eighth Amendment rights.[2] Defendants have filed a Motion for Summary Judgment, which is ripe for the Court's consideration. [Filing No. 48.]

**I.**
**SUMMARY JUDGMENT STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party, including giving that party the benefit of conflicting evidence, and draws all reasonable inferences in that party's favor. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022); *Khungar v. Access Cmty. Health*

---

[1] Mr. Moton is currently incarcerated at New Castle Correctional Facility.

[2] These are the claims which the Court found should proceed after the Court screened Mr. Moton's Complaint pursuant to 28 U.S.C. § 1915A(a), (c). [Filing No. 2; Filing No. 14.]

1

*Network*, 985 F.3d 565, 572-73 (7th Cir. 2021); *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up). "Taking the facts in the light most favorable to the non-moving party does not mean that the facts must come only from the nonmoving party. Sometimes the facts taken in the light most favorable to the non-moving party come from the party moving for summary judgment or from other sources." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (cleaned up). Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
### PRELIMINARY MATTERS

Before setting forth the facts, the Court addresses several preliminary concerns with respect to the pending motion.

### A.   Local Rules

In their reply in support of their motion for summary judgment, Defendants argue that they complied with Local Rule 56-1(a) by properly filing their "Statement of Material Facts Not in Dispute," and contend that Mr. Moton's response did not comply with the same. [Filing No. 54 at 2.] They assert that Mr. Moton improperly combined factual assertions with legal argument and provided only minimal citations to supporting evidence. [Filing No. 54 at 2.] Based on these alleged deficiencies, Defendants argue that the Court should disregard the evidence and factual claims in Mr. Moton's response and instead accept Defendants' version of the facts as undisputed for purposes of summary judgment. [Filing No. 54 at 2.]

Local Rule 56-1(a) provides:

> **(a)   Movant's Obligations.** A party seeking summary judgment must file and serve a supporting brief and any evidence (that is not already in the record) that the party relies on to support the motion. The brief must include a section labeled "Statement of Material Facts Not in Dispute" containing the facts:
> **(1)** that are potentially determinative of the motion; and
> **(2)** as to which the movant contends there is no genuine issue.

Defendants emphasize this rule, yet their own filings fall short of strict compliance. Rather than including their "Statement of Material Facts Not in Dispute" within their brief as required— "[t]he brief *must include* a section labeled 'Statement of Material Facts Not in Dispute' *containing the facts*"—they filed it as a separate document. S.D. Ind. L.R. 56-1(a) (emphases added). [Filing No. 49 (brief in support of motion for summary judgment); Filing No. 50 (Statement of Material Facts accompanying the brief in support of motion for summary judgment).]

3

So, the Court in its discretion pursuant to Local Rule 1-1(c) declines Defendants' request to penalize Mr. Moton for procedural shortcomings when they themselves also did not comply with the Local Rules. S.D. Ind. L.R. 1-1(c) (granting the Court discretion to modify or suspend any Local Rule "in a particular case in the interest of justice"); *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) ("We have not endorsed the very different proposition that litigants are entitled to expect strict enforcement by district judges. Rather, it is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." (citation and quotation marks omitted)). To strictly enforce the Local Rules in this case would be impractical and would obstruct the interests of justice. Accordingly, the Court will not strictly enforce Local Rule 56-1(a) against either party.[3] Instead, it will adopt a more flexible approach and consider the filings and evidence submitted by both sides.[4]

  B.  **Admissibility of PCF's Suicide Prevention Plan**

Mr. Moton submits two pages from PCF's Suicide Prevention Plan alongside his response in opposition to Defendants' motion, arguing that Defendants failed to follow it after he informed them of his intent to self-harm. [Filing No. 53 at 7-11; Filing No. 53-1 at 1-2.]

---

[3] The Court notes that Defendants also failed to comply with the Court's Practices and Procedures—available on the Court's website—which explicitly provide that, when citing to electronically filed exhibits, parties must "cite to the docket number, the attachment number (if any), and the applicable .pdf page as it appears on the docket information located at the top of the filed document." https://www.insd.uscourts.gov/content/judge-jane-e-magnus-stinson. Failure to utilize the correct citation form has made the Court's review of the pending Motion for Summary Judgment unnecessarily cumbersome. [Filing No. 49; Filing No. 50; Filing No. 54.] Counsel for Defendants is reminded that the Practices and Procedures are not optional and must be followed in this case and in all other cases going forward. Mr. Moton, on the other hand, correctly cited to the docket for the most part when he provided citations.

[4] Defendants make the same argument in response to a surreply filed by Mr. Moton, [Filing No. 58], and the Court rejects that argument for the same reasons.

In reply, Defendants contend that Mr. Moton did not disclose the Suicide Prevention Plan in discovery and "failed to timely disclose his reliance on [it]." [Filing No. 54 at 5.] They assert that their Request for Production No. 8 asked Mr. Moton "to produce any documentary evidence upon which [he relies] to establish support [for] the nature and extent of [his] claims," and that he attached some documents to his request, but did not produce the Suicide Prevention Plan until his response in opposition to their motion for summary judgment. [Filing No. 54 at 5.] Therefore, Defendants request that the Court disregard any arguments based on it. [Filing No. 54 at 5.]

Mr. Moton did not address Defendants' argument in his Surreply. [Filing No. 55.]

Federal Rule of Civil Procedure 37(c)(1) provides that a party may not use information or evidence in support of a motion that it failed to disclose or supplement as required by Rule 26(a) or (e), unless justified or harmless. *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012). Rule 26(e) requires that a party who has responded to a request for production, interrogatory, or request for admission must supplement or correct its response if the response is incorrect. The party who violates Rule 26(a) or (e) bears the burden of establishing that the failure was substantially justified or harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (citation omitted). Mr. Moton has not attempted to make such a showing, so the Court will not consider the evidence of the Suicide Prevention Plan or arguments regarding it in ruling on the motion.

C.     **Review of the Summary Judgment Standard**

Lastly, the Court finds it necessary to emphasize Defendants' obligations regarding factual disputes at the summary judgment stage given their disregard for Mr. Moton's deposition

5

testimony[5] where it conflicts with their version of events. As the Seventh Circuit clearly explained in *Ziccarelli*, a party moving for summary judgment cannot simply ignore contradictory testimony from the non-moving party and assert its own narrative as undisputed:

> The [defendant (movant)] attempts to argue there is no genuine dispute of material fact, but in doing so it relies on [its] version of [a] key conversation with [plaintiff], even though [plaintiff] directly contradicted [defendant's] version in his deposition testimony. Our precedent demands more of the moving party at summary judgment. *See, e.g.*, *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021) (discouraging moving party from presenting facts with a "loose allegiance" to the summary judgment standard); *Malin v. Hospira, Inc.*, 762 F.3d 552, 564-65 (7th Cir. 2014) (reversing summary judgment and criticizing moving party for ignoring conflicting evidence); *Payne v. Pauley*, 337 F.3d 767, 770-73 (7th Cir. 2003) (reversing summary judgment and explaining that both the moving and non-moving parties may rely on "self-serving" testimony) . . . .

*Ziccarelli*, 35 F.4th at 1083. Further, Seventh Circuit precedent is clear that both parties are entitled to rely on their own sworn testimony, and it is not the role of the Court at summary judgment to assess credibility or weigh competing versions of the facts. *Id.* ("Even if a judge might believe a moving party has more and/or better evidence in its favor, a motion for summary judgment does not authorize or invite the judge to weigh evidence and decide whose story is more credible or persuasive."). Those functions are reserved for the jury. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [s]he is ruling on a motion for summary judgment or for a directed verdict.").

---

[5] To be sure, deposition testimony, including "'self-serving' deposition testimony *may* satisfy a party's evidentiary burden on summary judgment" when the statements are "based on personal knowledge and . . . grounded in observation as opposed to mere speculation." *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010) (emphasis omitted, quoting *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)); Fed. R. Civ. P. 56(c)(1)(A), (c)(4).

With this firm reminder of the applicable standard and recognizing that the Court's role at this stage is to view the evidence in the light most favorable to the non-moving party—here Mr. Moton—the Court sets forth the following Statement of Facts.

## III.
### STATEMENT OF FACTS

The facts stated below are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A. Mr. Moton's Health Diagnoses

Mr. Moton has diagnoses of schizoaffective disorder, antisocial personality disorder, anxiety, and depression, and prior to the events of this lawsuit, was documented as meeting the Indiana Department of Correction's Serious Mental Illness criteria. [Filing No. 48-2 at 8-9; Filing No. 48-3 at 40-42; Filing No. 48-4 at 14; Filing No. 53-1 at 18.] He has a history of suicidality and self-harm and had previously been placed on suicide monitoring at PCF just months prior to the incident at issue after self-inflicting "multiple cuts to [his] left wrist" and reporting thoughts of suicide. [Filing No. 48-3 at 40-43; Filing No. 48-4 at 4.] Mr. Moton also has chronic kidney disease for which he receives a special renal diet meal tray at each meal. [Filing No. 48-2 at 30; Filing No. 48-3 at 23-24.]

### B. Officer Surguy's and Sgt. Alderson's Familiarity with Mr. Moton

Officer Surguy was familiar with Mr. Moton because he lived on the cell block that Officer Surguy worked and Officer Surguy knew that Mr. Moton had interactions with the mental health unit. [Filing No. 48-1 at 1.] Officer Surguy believed that "Mr. Moton frequently made threats to harm others when he did not get his way, [and if] this failed to achieve what he wanted, he would

7

threaten to harm himself." [Filing No. 48-1 at 1.] He also knew that Mr. Moton sometimes "did harm himself by making superficial cuts to the arm and wrist." [Filing No. 48-1 at 1.] Sgt. Alderson was also familiar with Mr. Moton and his mental health diagnoses. [Filing No. 48-3 at 1.]

### C. Mr. Moton Self-Harms on March 16, 2022

On March 16, 2022, Officer Surguy and Sgt. Alderson were delivering meal trays and did not give Mr. Moton his renal diet meal tray, despite having it on the meal cart. [Filing No. 48-2 at 21-22.] Sometimes his renal diet tray would not be on the cart and an officer would have to reorder it from the kitchen, but this was the first time that his renal diet tray was on the cart and he was denied the tray. [Filing No. 48-2 at 21-22.] Mr. Moton asked for his renal diet tray, and Officer Surguy told him that he would not be receiving it, used a racial slur, referred to him as "a stupid mental patient," and instructed him to return to his cell. [Filing No. 48-1 at 1; Filing No. 53-1 at 5-6.] Mr. Moton advised Officer Surguy and Sgt. Alderson that if he had to return to his cell without being provided his renal diet tray, he was going to self-harm. [Filing No. 53-1 at 5; see Filing No. 48-2 at 21.] Officer Surguy responded, "I don't give a [f***] you stupid mental patient go and do it [f******] stupid [n*****] lock in now."[6] [Filing No. 53-1 at 5; see Filing No. 48-2 at 21.]

Mr. Moton was locked in his cell and proceeded to inflict cuts to his left wrist with a razor that he had bought from the commissary. [Filing No. 48-3 at 46.] He was immediately taken for

---

[6] Defendants submitted evidence that Mr. Moton did not communicate his intent to self-harm and that Officer Surguy did not make the alarming statement that Mr. Moton alleges. But the Court discharges its responsibility "to take the facts in the light most favorable" to Mr. Moton as the non-moving party and does "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart*, 14 F.4th at 760 (citation omitted).

8

a nurse visit, where he denied being suicidal and reported that he "cut [himself] because [his] renal [diet] tray was taken away from [him]." [Filing No. 48-3 at 46.] A nurse treated Mr. Moton's "[s]everal superficial [l]aceration[s]" on his left wrist by cleaning them with saline and applying bacitracin antibiotic ointment and a dressing. [Filing No. 48-4 at 11-12.] Mr. Moton later received his renal diet meal tray. [Filing No. 48-2 at 33-34.]

### D. This Lawsuit

Mr. Moton filed his *pro se* Complaint on September 29, 2023. [Filing No. 2.] The Court screened Mr. Moton's Complaint pursuant to 28 U.S.C. § 1915A, and found that he stated an Eighth Amendment claim via 42 U.S.C. § 1983 against both Officer Surguy and Sgt. Alderson. [Filing No. 14.] Mr. Moton alleges that Officer Surguy and Sgt. Alderson were deliberately indifferent to his mental health and thoughts of self-harm and should have acted to prevent him from self-harming on March 16, 2022. [Filing No. 2; Filing No. 14.]

## IV.
### DISCUSSION

In support of their motion, Defendants argue that they are entitled to summary judgment because there is no evidence that Defendants deliberately disregarded an actual risk to Mr. Moton's life. [Filing No. 49 at 5.] They concede that Mr. Moton presented an objective risk of harm because of his diagnoses and history of self-harm and suicidality, but they assert that, "[b]ased upon [Officer Surguy's] experience and familiarity with [Mr. Moton] and his overall history of prior behavior and mental health issues, [Officer] Surguy did not believe [Mr. Moton] would hurt himself badly enough to present an actual risk to his life. Nor can the inference be drawn that a substantial risk of harm existed in this setting, or that the Defendants deliberately disregarded said

risk." [Filing No. 49 at 5.] Defendants also argue that Mr. Moton suffered only a *de minimus* injury and therefore may not recover under 42 U.S.C. § 1983. [Filing No. 49 at 6.]

      In response, Mr. Moton argues that Officer Surguy was deliberately indifferent to his life and safety when he told Mr. Moton that he did not care if Mr. Moton self-harmed and said that Mr. Moton should "do it." [Filing No. 53 at 2-5.] He highlights that Officer Surguy was aware of Mr. Moton's mental health issues and diagnoses yet purposefully ignored the situation, which he asserts was the "functional equivalent of wanting harm to come" to him in violation of his Eighth Amendment rights. [Filing No. 53 at 6 (citations omitted).] Mr. Moton also argues that Officer Surguy's use of a racial slur "shows malice" and that Officer Surguy is not a medical professional so his belief about the degree to which Mr. Moton would harm himself is not relevant. [Filing No. 53 at 6.] He asserts that his injuries were not *de minimus* because he was denied help for a serious medical need, which further increased his thoughts of self-harm and caused him to feel depressed and anxious, which led to an actual infliction of painful self-harm that left physical, mental, and emotional scars. [Filing No. 53 at 17-18.] Mr. Moton notes that Defendants did not address Sgt. Alderson specifically in their motion for summary judgment and asserts that she was "standing right beside" Officer Surguy when Mr. Moton stated his intention to self-harm and was familiar with his mental health history, yet allowed Mr. Moton to "lock in his cell," deliberately disregarding the risk to his safety. [Filing No. 53 at 21-22.]

      In reply, Defendants assert that Mr. Moton has "changed his contentions over time as the lawsuit has matriculated" by adding additional allegations of racial slurs and derogatory comments, which is "troublesome" and "seem to mean [Mr. Moton's recollection is] fabricated." [Filing No. 54 at 4.] They assert that considering the "inconsistencies," "he has failed to establish a genuine issue of material fact." [Filing No. 54 at 4.] They attach a new exhibit—an Affidavit

10

from Sgt. Alderson stating that she did not hear Mr. Moton's intention to self-harm. [Filing No. 54-1.] Defendants reiterate that Mr. Moton suffered only from a *de minimus* injury because the "wounds healed without the necessity of a higher level of medical care, and per [Mr. Moton's] prior history at the facility, he had previously caused superficial cuts to his arms and wrists." [Filing No. 54 at 6.] Lastly, Defendants assert that Mr. Moton's "attempts at self-harm are not genuine and are employed for secondary gain." [Filing No. 54 at 7.]

Mr. Moton filed a Surreply arguing that Sgt. Alderson did hear Mr. Moton say that he was going to self-harm if he had to lock away without his renal diet tray meal.[7]

The Eighth Amendment's prohibition on cruel and unusual punishment imposes duties on prison officials to ensure that inmates receive medical care and to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). A prison official's "deliberate indifference" to an inmate's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Farmer*, 511 U.S. at 828; *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "To prevail on a deliberate indifference claim, the plaintiff must prove (1) that he had an objectively serious medical condition (2) to which prison officials were 'deliberately, that is subjectively, indifferent.'" *Riley v. Waterman*, 126 F.4th 1287, 1295 (7th Cir. 2025) (quoting *Johnson v. Dominguez*, 5 F.4th 818,

---

[7] Defendants objected to Mr. Moton's Surreply on the basis that it was untimely under the Local Rules, [Filing No. 58 at 1-4], but the Court **OVERRULES** Defendants' objection because the Court had previously recognized Mr. Moton's Surreply as timely, [Filing No. 57 (Marginal Entry stating that "the Court accepts [Mr. Moton's] Surreply as timely filed")]. Nevertheless, the Court considers Mr. Moton's Surreply only to the extent that it responds to Defendants' new evidence pertaining to Sgt. Alderson. The remaining portions of Mr. Moton's Surreply—including several exhibits reflecting incidents that occurred after the March 16, 2022 incident at issue and a copy of a response that appears to be from another lawsuit—will not be considered because they do not meet the circumstances outlined in Local Rule 56-1(d) (allowing a summary judgment surreply only in limited circumstances where the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response).

824 (7th Cir. 2021)). The standard is not mere negligence—it requires proof that the defendant knew of and disregarded an excessive risk of inmate health or safety or that they were aware of facts suggesting a substantial risk and consciously ignored it. *Jackson v. Esser*, 105 F.4th 948, 961 (7th Cir. 2024) (quotations and citations omitted); *Stewart*, 14 F.4th at 763 ("[D]eliberate indifference requires more than negligence or even gross negligence.") (quotations omitted).

Here, Defendants concede that Mr. Moton has satisfied the first element—namely, that he suffers from an objectively serious medical condition due to his documented history of suicidality and self-harm. [Filing No. 49 at 5.] This is consistent with existing case law recognizing that suicide and acts of self-harm pose a serious risk to inmate health. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006); *Goodvine v. Ankarlo*, 9 F. Supp. 3d 899, 934 (W.D. Wis. 2014). The Court therefore focuses on the second, and disputed, element—whether Defendants acted with subjective deliberate indifference.

To establish this element, Mr. Moton must show that Defendants "*actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Our case law makes equally clear that prison officials cannot intentionally disregard a known risk that an inmate is suicidal." *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020) (citing *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019) (collecting cases)).

Taking the evidence in the light most favorable to Mr. Moton, as the Court must at this stage, a reasonable jury could conclude that Mr. Moton has produced sufficient evidence that Defendants acted with subjective deliberate indifference to a substantial risk of harm. The evidence shows: (1) that Officer Surguy provoked Mr. Moton by deliberately withholding his renal diet tray (despite having it), using a racial slur, and calling him a "a stupid mental patient"; (2) that

in response, Mr. Moton explicitly told both Officer Surguy and Sgt. Alderson that he intended to self-harm; (3) that they both knew of his history of self-harm, suicidal ideation, and existing mental health diagnoses; (4) that he had been on suicide monitoring just months prior for self-harm and thoughts of suicide; and (5) that they not only ignored the risk to Mr. Moton's health and safety, but that Officer Surguy escalated the situation further with more slurs and insults and by encouraging Mr. Moton to self-harm. This is precisely the kind of situation in which courts have denied summary judgment. *See Goodvine*, 9 F. Supp. 3d at 936 (denying summary judgment on deliberate indifference claim to prison official who ignored inmate's explicit warning that he intended to self-harm); *Upthegrove v. Baird*, 2017 WL 53620, at *4 (W.D. Wis. Jan. 4, 2017) (same, where officials told the inmate they "hoped" he would not cut himself); *see also Smego v. Mitchell*, 723 F.3d 752, 758 (7th Cir. 2013) ("[E]ven non-medical personnel cannot stand by and ignore a detainee's complaints of serious medical issues."); *cf. Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) (granting summary judgment where the official took prompt action to summon help and monitor the inmate). Really, this case presents an even more troubling scenario: according to Mr. Moton's account, Officer Surguy did not merely disregard Mr. Moton's risk of self-harm—he contributed to it by intentionally withholding Mr. Moton's renal diet tray and provoking him with a degrading racial slur and name calling and then disregarded it.

Defendants' arguments to the contrary are unavailing. Their argument that Mr. Moton suffered only from *de minimus* injuries is ineffective because it focuses solely on Mr. Moton's physical injuries and ignores Mr. Moton's allegations of psychological pain, which is a type of pain cognizable under the Eighth Amendment. *Delaney v. DeTella*, 256 F.3d 679, 685 (7th Cir. 2001) ("The defendants also are wrong in concluding that only a showing of physical injury can satisfy an Eighth Amendment claim.") (citing *Hudson v. McMillian*, 503 U.S. 1, 16 (1992) (Blackmun,

13

J., concurring) ("It is not hard to imagine inflictions of psychological harm—without corresponding physical harm—that might prove to be cruel and unusual punishment.")).

Defendants' contention that Mr. Moton's testimony is "fabricated" and inconsistent because it evolved during discovery is without merit. A complaint need only provide a short and plain statement of the claim, Fed. R. Civ. P. 8(a)(2), and discovery is intended to refine the issues and uncover relevant facts. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Beaman v. Souk*, 7 F. Supp. 3d 805, 821 (C.D. Ill. 2014), *aff'd sub nom. Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015). The fact that not all the factual allegations were present in Mr. Moton's case from the start, without more, is not suspicious. In any event, Defendants' argument improperly invites the Court to make a credibility determination regarding the events of March 16, 2022, which is the exclusive role of the factfinder. *Miller*, 761 F.3d at 827.

Finally, Defendants' assertion that Mr. Moton's self-harm threat was not genuine but instead a manipulative effort for secondary gain improperly invites the Court to step into the jury's role. It is undisputed that Mr. Moton suffers from serious mental health conditions and has a history of suicidality. Against this factual backdrop and at this stage, the Court cannot conclude that this case involves merely an insincere suicide threat by an inmate seeking attention or to coerce some type of action. In *Lord v. Beahm*, 952 F.3d 902, 904-06 (7th Cir. 2020), the Seventh Circuit granted summary judgment where the record clearly established that the plaintiff made a calculated, insincere threat of suicide to gain attention. However, the Court in *Lord* also cautioned that "tomorrow's case may entail a fact pattern nowhere near as straightforward," emphasizing that the Eighth Amendment prohibits prison officials from disregarding the needs of an inmate who presents more than an idle threat, whether due to serious mental illness or another grave medical condition. *Id.* at 905-06. This case is precisely such a scenario. The evidence is conflicting, and

while a jury could ultimately agree with Defendants' interpretation—that Mr. Moton's threat was manipulative and that he did not, despite documented mental illnesses, present a substantial risk of serious self-harm—that determination must be left to the jury. It is not for the Court to weigh credibility or resolve factual disputes at this stage. *Stewart*, 14 F.4th at 760.

In sum, viewing the evidence in the light most favorable to Mr. Moton, there is sufficient evidence from which a reasonable jury could find that Defendants acted with deliberate indifference to a substantial risk of serious harm. Accordingly, Defendants' Motion for Summary Judgment is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Summary Judgment, [48]. The Court requests that the Magistrate Judge confer with the parties as soon as practicable to address the possibility of resolving Mr. Moton's claims prior to trial.

Date: 7/2/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**

**Distribution via U.S. Mail to:**

ANDRE MOTON
231926
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362